**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**FERGUS FALLS DIVISION**

| | |
|---|---|
| ROBYN SMITH for DEVAN VANBRUNT, a Minor, by his Mother and Natural Guardian, | ) Case No.: 0:11-cv-01771 ) |
| | ) JUDGE KYLE |
| Plaintiff, | ) |
| | ) MAGISTRATE BRISBOIS |
| vs. | ) |
| | ) |
| BLITZ U.S.A., INC.; WAL-MART STORES, INC.; and KINDERHOOK INDUSTRIES, LLC, | )       SECOND ) AMENDED COMPLAINT |
| | ) |
| Defendants. | ) DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff, Robyn Smith for Devan VanBrunt, a Minor, by his Mother and Natural Guardian, both Citizens of the State of Minnesota, by and through the undersigned counsel, and in support of their claims against the Defendants: Blitz U.S.A., Inc., an Oklahoma corporation; Wal-Mart Stores, Inc., a Delaware corporation; and Kinderhook Industries, LLC, a Delaware limited liability company, and hereby states and alleges as follows:

**PARTIES**

1.     Plaintiff Robyn Smith, is the mother and natural guardian of Devan VanBrunt, a minor, and brings this action in such capacity pursuant to Minn. Stat. §540.08. Robyn Smith and Devan VanBrunt are individuals, citizens, and residents of Clay County, Minnesota.

2.     Defendant Blitz U.S.A., Inc. ("Blitz"), is an insolvent Oklahoma corporation currently in its 216th day of Chapter 11 reorganization. Blitz transacts business in Minnesota by marketing its plastic gasoline containers to consumers in Minnesota and distributing and selling them through nationwide store chains located in Minnesota that are owned and operated by the Wal-Mart Defendants. Blitz maintains its principal place of business in Miami, Oklahoma. Blitz can be served with process through its registered agent and for which process may be had by

serving Rocky Flick, President and CEO, Blitz U.S.A., Inc., 404 26th Ave. NW, Miami, Oklahoma 74354-2206.

3.     The subject plastic gasoline container that caused the personal injuries giving rise to this action is a Blitz Model # 50833 five-gallon container. Blitz designed, manufactured, and placed the subject plastic gasoline container into stream of commerce.

4.     Defendant Wal-Mart Stores, Inc., is a Delaware corporation, engaged in business in Minnesota and its principal place of business is located at 702 SW 8th Street, Bentonville, Arkansas 72716. Wal-Mart Stores, Inc. may be served process through its registered agent C.T. Corporation System, Inc., 100 South 5th Street, #1075, Minneapolis, Minnesota 55402.

5.     Defendant Kinderhook Industries, LLC, is a Delaware limited liability company, with its principal place of business located at 888 Seventh Ave., Suite 1600, New York, New York 10106. Kinderhook Industries, LLC, is composed of three members: Robert Michalik, who is a citizen of Rye, New York; Christian Michalik, who is citizen of Riverside, Connecticut; and Thomas Tuttle, who is a citizen of New York, New York. Kinderhook Industries, LLC, may be served process by through their registered agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808.

## VENUE & JURISDICTION

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The named Defendants are all foreign corporate entities while the Plaintiff is a resident of Minnesota, resulting in complete diversity. Plaintiff's claim for damages the amount in controversy as to Plaintiff and Defendants exceeds, exclusive of costs and interest, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

9.      Venue is appropriate in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted by the Plaintiff occurred here.

10.     Plaintiff is a citizen of Clay County, Minnesota.

11.     Defendants Blitz and Wal-Mart have purposefully availed themselves of the privilege of conducting business activities within the State of Minnesota by placing their products, including the portable gasoline container at issue in this matter, into the stream of commerce and by advertising their products and the Wal-Mart Defendants by also establishing retail facilities within the State.

12.     Defendants Blitz and Wal-Mart derive substantial revenue from goods sold and used in the State of Minnesota.

13.     Defendants Blitz and Wal-Mart do reasonably expect, or should reasonably expect, that their business activities could or would have consequences within the State of Minnesota.

14.     Defendants Blitz and Wal-Mart have established continuous and systematic contacts with the State of Minnesota sufficient to confer general jurisdiction pursuant to Minn. Stat. §534.19.

15.     Defendant Kinderhook, having organized and operated Blitz as an instrumentality and/or alter ego that conducted activities within the State of Minnesota, is sufficient to confer vicarious personal jurisdiction pursuant to Minn. Stat. §534.19 and impute the personal jurisdiction of the Blitz U.S.A., Inc. to Kinderhook Industries, LLC.

## FACTUAL BACKGROUND

16.    At a time prior to April 11, 2010, the Defendant Blitz designed and manufactured a portable plastic gas can for sale in the stream of commerce (referred to hereinafter as "Subject Gas Can").

17.    At a time prior to April 11,2010, the Subject Gas Can was sold by the Wal-Mart Defendants to a family member in the VanBrunt household.

18.    On or about April 11, 2010, Devan VanBrunt used the Subject Gas Can to pour gas to be used in the ignition of a charcoal grill on his family's outdoor patio in Clay County, Minnesota. Shortly thereafter, gasoline vapors outside the Subject Gas Can ignited and the flame flashed back following the vapor trail inside the container, causing the Subject Gas Can to explode. The explosion caused severe burn injuries to Devan VanBrunt.

19.    The Defendant Blitz designed, manufactured, assembled, marketed, distributed and sold the Subject Gas Can that caused Devan Van Brunt's injuries and Plaintiffs damages.

20.    The Subject Gas Can was not modified or altered after it left the control of Defendants Blitz and Wal-Mart, and Devan VanBrunt was utilizing the Subject Gas Can in an ordinary and reasonable manner in which the Subject Gas Can was intended and reasonably expected to be used.

21.    Prior to the manufacturer and sale of the Subject Gas Can, these Defendants were aware that Blitz gas can owners use the cans to pour gas as an ignition source for fires.

22.    Thus, Devan VanBrunt's use of the Subject Gas Can was reasonably foreseeable.

23.    The Subject Gas Can was defective and unsafe for its intended purposes at the time it left the control of these Defendants in that the design failed to include a flame arrestor device, which is a necessary safety device that would have prevented the injuries set forth herein.

4

24.     Prior to the manufacture and sale of the Subject Gas Can, these Defendants were aware that other manufacturers including Eagle Manufacturing and Chilton had chosen to incorporate flame arrestors into plastic gas cans.

25.     Thus, the incorporation of flame arrestors into plastic gas cans was technologically feasible.

26.     Defendants Blitz and Wal-Mart knew or should have known of the Subject Gas Can's susceptibility to flashback which occurs when gasoline vapors ignite and the flames chase the vapor trail back into the can, causing an explosion and/or spew of flames and burning gasoline.

27.     Prior to the explosion of the Subject Gas Can, neither the Plaintiff nor Devan VanBrunt were aware that the Subject Gas Can could have been sold with a flame arrestor and/or that it did not contain a flame arrestor, nor were they aware that a fire could follow fumes and flash back into the can resulting in a violent explosion.

28.     As a direct and proximate result of Defendants Blitz's and Wal-Mart's acts and/or omissions in the design, manufacture, assembly, marketing, distribution and sale of the Subject Gas Can, which lacked a flame arrestor/flashback arrestor, Devan VanBrunt suffered and continues to suffer severe personal injuries, including, but not limited to, severe burns, physical pain and impairment, physical disfigurement and other recoverable damage.

29.     On November 9, 2011, Blitz and its five corporate affiliates filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Delaware, save and except their ultimate parent and majority shareholder-Kinderhook Capital Fund II, L.P. ("Kinderhook Capital"). [Docket No. 23].

30.     Kinderhook Capital is owned, managed, and controlled by Kinderhook Industries, LLC. Further, each of the members of Kinderhook Industries, LLC, personally owns a limited partnership interest in Kinderhook Capital-the ultimate parent of Blitz U.S.A., Inc.

31.     Because Kinderhook has abused the corporate form to fraudulently obtain limited liability and completely disregarded the corporate formalities between LAM 2011 Holdings, LLC (f/k/a/ Blitz Holdings, LLC) and its subsidiary affiliates and operated them as instrumentalities and/or alter egos, and financed their operations in a serious of complicated shell companies in order to deplete the assets of Blitz U.S.A., Inc. and defraud its creditors, Kinderhook is liable for any judgment Plaintiff may obtain against Blitz under the equitable doctrine of piercing the corporate veil.

## CAUSES OF ACTION

### COUNT 1 DESIGN DEFECT
(Defendant Blitz U.S.A., Inc.)

32.     Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

33.     The Subject Gas Can designed, manufactured, assembled, marketed, distributed, and sold by the Defendant Blitz was defective and unreasonably dangerous when sold.

34.     The Subject Gas Can designed, manufactured, assembled, marketed, distributed, and sold by the Defendant Blitz was the producing cause of Devan VanBrunt's injuries and the damages sought by Plaintiff herein.

35.     Defendant Blitz is engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling portable gas cans, including the Subject Gas Can, to consumers within the stream of commerce.

36.     Defendant Blitz expected the Subject Gas Can, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.

37.     The Subject Gas Can was without substantial change in the condition from which it was originally sold by the Defendant Blitz and unexpectedly failed under ordinary and foreseeable use.

38.     At the time the Subject Gas Can left Defendant Blitz's control, and at all times complained of, safer alternative designs were available that would have eliminated the risk of the Subject Gas Can exploding without substantially impairing the usefulness and intended purpose of the product.

39.     The Subject Gas Can was unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case.

40.     A flame arrestor, sometimes called a flame arresting screen, flash arrestor or spark arrestor, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal screen or a wire mesh screen.

41.     The efficacy of flame arresters has been known to the gasoline manufacturing industry for decades, and particularly the manufacturers of portable gas cans have been aware of their existence since before they were first placed in industrial gas cans in the 1920's and began being placed in consumer gas cans by at least 1978.

42.     For more than a quarter century, the utility and efficacy of flame arrestors has been a topic of discussion in the media and national publications and the subject of numerous

lawsuits filed by consumers, users, and bystanders who have been burned and/or killed in encounters with portable gas cans that were not equipped with the device.

43.     Consequently, the Defendant Blitz has known, or should have known, for decades prior to this incident that gas cans without flame arrestors were susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trails back inside the container causing it to explode and/or spew flames and burning gasoline).

44.     Without the inclusion of a flame arrester, the foreseeable risk of injury and/or death associated with the use of the Subject Gas Can far exceeded any utility and/or benefits associated with its design without a flame arrester.

45.     Nevertheless, despite the wealth of available scientific knowledge, the Defendant Blitz has made, and continues to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate a well-known safety device into its portable gas cans, despite the fact that this safety device is economically and technologically feasible.

46.     Defendant Blitz failed to exercise the degree of care in the plan or design of the Subject Gas Can so as to avoid an unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended.

47.     As a direct and proximate result of one or more of the Defendant Blitz's acts or omissions as described herein and as a direct and proximate result of the Subject Gas Can's defective design, Devan VanBrunt suffered severe burn injuries and Plaintiff has incurred damages.

48.     As such, Defendant Blitz is strictly liable to Plaintiff for the damages caused by the defective exploding Subject Gas Can.

## COUNT 2 FAILURE TO WARN
### (Defendant Blitz U.S.A., Inc.)

49.     Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

50.     Defendant Blitz owed a duty to warn consumers such as the VanBrunts of the foreseeable risk associated of using a plastic gas can without a flame arrestor.

51.     Defendant Blitz failed to provide adequate warnings that would be reasonably calculated to catch the attention of a reasonably prudent person given that its warnings were not conspicuous.

52.     At the time the portable gas can left the Defendant Blitz's control, consumers and/or foreseeable users, such as Devan VanBrunt, were not and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using the Defendant Blitz's portable gas cans.

53.     Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, the Defendant Blitz knew, and was certainly in the best position to know, that its portable gas cans, as designed, posed a tremendous and horrific risk of injury to consumers, users, and bystanders.

54.     As a direct proximate result of one or more of the Defendant Blitz's failures to warn of the subject gas can's defective design, Devan VanBrunt suffered severe bum injuries. These burn injuries were foreseeable by Defendant Blitz.

55.     As such, Defendant Blitz is liable pursuant to Minnesota law including violating

the duty to warn of non-obvious foreseeable dangers from the normal use of its products.

## COUNT 3 NEGLIGENCE
(Defendant Blitz U.S.A., Inc.)

56.     Plaintiff re-alleges and incorporates in this count each and every preceding

allegation as if fully pled herein.

57.     Defendant Blitz owed consumers and/or foreseeable users, including Devan

VanBrunt, the duty of reasonable care in its design, manufacture, assembly, marketing,

distribution and sale of the Subject Gas Can.

58.     Defendant Blitz ignored and/or breached that duty by its following negligent acts

and/or omissions:

A.     Failed to design and produce a reasonably safe portable gas can;

B.     Designed, manufactured, assembled, marketed, distributed, and sold a portable
gas can that was defective;

C.     Placed into the stream of commerce a portable gas can that was defective in
design;

D.     Placed into the stream of commerce a portable gas can that was defective in that it
failed to contain adequate warnings and instructions;

E.     Placed into the stream of commerce a portable gas can that was unfit for its
intended use;

F.     Placed into the stream of commerce a portable gas can likely to cause injury in its
ordinary use;

G.     Failed to incorporate a flame arrestor in the product design;

H.     Failed to properly test its portable gas can and prototypes thereof with flame
arresting material;

I.      Failed to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

J.      Failed to provide adequate warnings that would be reasonably calculated to catch the attention of a consumer and/or user of that would convey a fair indication of the nature and extent of the dangers involved in using or misusing its product;

K.      Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountered portable gas cans;

L.      Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gas cans;

M.      Ignored and/or failed to investigate scientific, technological and industry information and studies regarding the efficacy of flame arrestors;

N.      Ignored and/or failed to investigate other lawsuits and/or similar incidents involving similar claims and incidents in which consumers, users, children, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gas cans;

O.      Failed to report incidences and lawsuits involving other consumers, users, and bystanders who have been burned and/or killed when encountering the portable gas cans to the Consumer Product Safety Commission;

P.      Failed to warn that the gas can was not equipped with safety devices;

Q.      The subject gas can, as sold, posed a risk of flammable vapor ignition, flashback and explosion to users beyond that understood or contemplated by the average reasonable consumer, and the risks associated with this design outweighed its utility; and

R.      The Defendant Blitz knew or should have known that consumers would use their gas cans to start and/or maintain a fire, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent ignition and flashback.

59.      As an actual and proximate result of Defendant Blitz's negligent acts and/or

omissions, the Subject Gas Can, that caused Devan VanBrunt's injuries, was placed into the

stream of commerce in a defective and unreasonably dangerous condition.

60.     Devan VanBrunt's injuries and the manner in which they occurred were reasonably foreseeable to the Defendant Blitz, which had actual and/or constructive knowledge from within the industry, nation publications, media reports and prior claims and lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when encountering their portable gas cans.

61.     As a direct and proximate result of one or more of the Defendant Blitz's negligent acts or omissions as described herein, Devan VanBrunt suffered severe burn injuries.

## COUNT 4 STRICT LIABILITY DESIGN DEFECT
(Defendant Wal-Mart Stores, Inc.)

62.     Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

63.     The Subject Gas Can marketed, distributed, and sold by the Wal-Mart was defective and/or unreasonably dangerous when sold.

64.     The Subject Gas Can was the producing cause of Devan VanBrunt's injuries and the damages sought by Plaintiff herein.

65.     Wal-Mart is engaged in the business of marketing, distributing, and selling portable gas cans, including the Subject Gas Can, to consumers within the stream of commerce.

66.     Wal-Mart Defendant had actual knowledge of the defect in the Subject Gas Can which caused the injury because prior to the sale to the VanBrunt family Wal-Mart had been sued in other product liability cases involving defective gas cans that exploded and injured Wal-Mart customers because the gas cans did not include flame arrestors.

67.     Wal-Mart expected the Subject Gas Can, so introduced and passed on in the course of trade, to ultimately reach the residential consumer and/or users without substantial change in the condition in which it was originally sold.

68.     The Subject Gas Can was without substantial change in the condition from which it was originally sold by Wal-Mart and unexpectedly failed under ordinary and foreseeable use.

69.     At the time the portable gas can left Wal-Mart's control, and at all times complained of, safer alternative designs were available that would have eliminated the risk of the Subject Gas Can exploding without substantially impairing the usefulness and intended purpose of the product and Wal-Mart was aware of these safer alternatives but chose to sell the unreasonably dangerous Subject Gas Can.

70.     The Subject Gas Can was unreasonably dangerous and defective in that its design and construction did not incorporate a flame arrestor, a technologically and economically feasible safety device that would have prevented the explosion in the present case.

71.     Without the inclusion of a flame arrestor, the foreseeable risk of injury and/or death associated with the use of the Subject Gas Can far exceeded any utility and/or benefits associated with its design.

72.     Nevertheless, despite the wealth of available scientific knowledge and knowledge of injuries suffered by other customers, Wal-Mart has made, and continues to make, a conscious decision to endanger the safety of consumers, users, and bystanders by selling plastic gas cans without this necessary safety device.

73.     As a direct and proximate result of Wal-Mart's acts or omissions as described herein and as a direct and proximate result of the Subject Gas Can's defective design, Devan VanBrunt suffered severe burn injuries and Plaintiff has incurred damages.

74.     As such, Wal-Mart is strictly liable pursuant to the provisions of Minn. Stat. §544.41, Subd 3, (b).

### COUNT 5 DUTY TO WARN
(Defendant Wal-Mart Stores, Inc.)

75.     Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

76.     Wal-Mart owed a duty to warn consumers such as the Plaintiff of the foreseeable risk associated of using a plastic gas can without a flame arrestor.

77.     Wal-Mart failed to provide adequate warnings that would be reasonably calculated to catch the attention of a reasonably prudent person given that its warnings were not conspicuous.

78.     At the time the portable gas can left Wal-Mart's control, consumers and/or foreseeable users, such as Devan VanBrunt, were not and still are not, likely to possess the knowledge of the extent and magnitude of the risks associated with using the Blitz portable gas cans without flame arrestors.

79.     Without such knowledge, consumers and/or foreseeable users would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Wal-Mart knew that portable gas cans, as designed without flame arrestors, posed a tremendous and horrific risk of injury to consumers, users, and bystanders. This knowledge was gained through lawsuits in which Wal-Mart was sued for selling dangerous gas cans that exploded and caused burns similar to those suffered by Devan VanBrunt.

80.     As a direct proximate result of Wal-Mart's failures to warn of the subject gas can's defective design, Devan VanBrunt suffered severe bum injuries. These burn injuries were foreseeable by Wal-Mart.

81.     As such, Wal-Mart is liable pursuant to Minnesota law including violating the duty to warn of non-obvious foreseeable dangers from the normal use of its products.

### COUNT 6 NEGLIGENCE
(Defendant Wal-Mart Stores, Inc.)

82.     Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

83.     Wal-Mart owed consumers and/or foreseeable users, including Devan VanBrunt, the duty of reasonable care in its marketing, distribution and sale of the Subject Gas Can.

84.     Wal-Mart ignored and/or breached that duty by its following negligent acts and/or omissions:

a.     Selling a portable gas can that was unreasonably dangerous and lacked an inexpensive flame arrestor safety device;

b.     Knowingly selling a portable gas can that was defective and unreasonably dangerous;

c.     Knowingly placing into the stream of commerce a portable gas can likely to cause injury in its ordinary use;

d.     Knowingly selling a portable gas can that did not include a flame arrestor;

e.     Failing to provide adequate instructions and warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

f.     Wal-Mart knew or should have known that consumers would use gas cans without flame arrestors sold by Wal-Mart to start and/or maintain a fire, creating an unreasonable and unexpected hazard of vapor ignition and resulting fire, without appropriate design features to prevent ignition and flashback.

85.     As an actual and proximate result Wal-Mart's negligent acts and/or omissions, the Subject Gas Can, that caused Devan VanBrunt's injuries, was placed into the stream of commerce in a defective and unreasonably dangerous condition. Devan VanBrunt's injuries and the manner in which they occurred were reasonably foreseeable to Wal-Mart, which had actual and/or constructive knowledge from media reports and prior claims and lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when encountering portable gas cans sold by them without flame arrestors.

86.     As a direct and proximate result of Wal-Mart's negligent acts or omissions as described herein, Devan VanBrunt suffered severe burn injuries and Plaintiff has incurred damages.

## COUNT 7 PIERCEING THE CORPORATE VEIL
(Kinderhook Industries, LLC)

87.     Plaintiff re-alleges and incorporates in this count each and every preceding allegation as if fully pled herein.

88.     On September 6, 2007, Kinderhook formed Blitz Holdings, LLC ("Blitz Holdings"), a Delaware limited liability company. David Britsch, a Senior Legal Assistant at the New York office of law firm Kirkland & Ellis LLP, located at 153 East 53rd Street, 39th Floor, New York, NY 10022, executed the Certificate of Formation as an Authorized Person of Blitz Holdings.

89.     On September 6, 2007, Kinderhook formed Blitz Acquisition Holdings, Inc. ("BAHI"), a Delaware corporation. BAHI was authorized by to issue one hundred (100) shares of Common Stock with a par value of one cent ($0.01) per share. David Britsch, a Senior Legal Assistant at the New York office of law firm Kirkland & Ellis LLP, located at 153 East 53rd

Street, 39th Floor, New York, NY 10022, executed the Certificate of Incorporation as the Sole Incorporator of BAHI.

90.     On September 6, 2007, Kinderhook formed Blitz RE Holdings, LLC ("Blitz RE"), a Delaware limited liability company. David Britsch, a Senior Legal Assistant at the New York office of law firm Kirkland & Ellis LLP, located at 153 East 53rd Street, 39th Floor, New York, NY 10022, executed the Certificate of Formation as an Authorized Person of Blitz RE.

91.     On September 10, 2007, Kinderhook formed Blitz Acquisition, LLC ("Blitz Acquisition"), a Delaware limited liability company. David Britsch, a Senior Legal Assistant at the New York office of law firm Kirkland & Ellis LLP, located at 153 East 53rd Street, 39th Floor, New York, NY 10022, executed the Certificate of Formation as an Authorized Person of Blitz Acquisition.

92.     On September 19, 2007, Blitz RE Holdings, LLC, a Delaware limited liability company, purchased all of real property owned by Blitz U.S.A., Inc. from John R. Elmburg, and recorded in that certain Special Warranty Deed, Book 849, Page 328-32, Official Records, Ottawa County, Oklahoma.

93.     On September 21, 2007, Blitz RE Holdings, LLC, as Landlord, and Blitz U.S.A., Inc., as Tenant, executed a Memorandum of Lease that expires on December 30, 2014, and recorded in that certain Memorandum of Lease, Book 849, Page 302-036, Official Records, Ottawa County, Oklahoma. Rocky Flick executed this Memorandum of Lease on behalf of both Landlord and Tenant.

94.     On September 21, 2007, Kinderhook released the following Press Release announcing its purchase of Blitz U.S.A., Inc., which stated in pertinent part:

"Blitz, one of the nation's premiere product manufacturers, has signed an agreement to sell the company to an investment group, which includes Blitz's current President, Rocky Flick, and Kinderhook Industries, LLC, a New York–based private equity firm. The announcement was made by Blitz owner John R. "Cy" Elmburg.

Elmburg, who will retire following completion of the sale, said several members of the current management team at Blitz, including Rocky Flick, have also acquired equity positions in the company in the transaction. Flick will become CEO following the close of the transaction, which is expected to be completed in the coming week. Elmburg's two sons will also be selling their company equity at this time. The Pet Division of Blitz, which is now Bergan LLC, will not be a part of the transaction.

A family-owned, locally operated business for three generations beginning with John C. Elmburg, Blitz has expanded from a one-product company to a diverse, multi-product company through the leadership of the Elmburg family. Founded in 1966, the company began as the only American company to supply gas cans to the U.S. government. In 1967, the company made its first venture in the consumer products arena by changing its jerry can from traditional drab-green to bright red and started selling to retailers across the country, making the red jerry can an American icon. Today, Blitz specializes in automotive and lawn and garden markets and is currently the largest manufacturer of plastic gas cans in the United States."

95.    Upon completion of the sell, Kinderhook restructured the ownership of the Defendant Oklahoma corporation into a series of interdependent wholly-owned subsidiary companies comprised of the Delaware limited liability companies and corporation previously identified in ¶¶ 89-93. Blitz Acquisition, LLC entered into a transaction with Blitz U.S.A., Inc.

and Blitz RE Holdings, LLC. acquiring all of their stock. Blitz Acquisition Holdings, Inc.

entered into a transaction with Blitz Acquisition, LLC acquiring all of its stock. Blitz Holdings,

LLC entered into a transaction with Blitz Acquisition Holdings, Inc. acquiring all of its stock. All

of the previously named entities failed to pay any dividends during their corporate existence.

96.     Robert Michalik, Managing Director and Member of Kinderhook Industries, LLC,

has served as the Sole General Partner Kinderhook Capital Fund II, L.P. since its formation on

May 31, 2006 through the present.

97.     Christian P. Michalik, Managing Director of Kinderhook Industries, LLC, has

served as Chairman of the Board of Directors of Blitz Holdings, LLC, and its four wholly owned

subsidiary companies: Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC; Blitz RE

Holdings, LLC; and Blitz U.S.A., Inc, (collectively "Blitz Holdings"), since their formation in

September of 2007 through the present.

98.     Louis Aurelio, Vice President at Kinderhook Industries, LLC, has served on the

Board of Directors of Blitz Holdings, LLC, and its four wholly owned subsidiary companies:

Blitz Acquisition Holdings, Inc.; Blitz Acquisition, LLC; Blitz RE Holdings, LLC; and Blitz

U.S.A., Inc, (collectively "Blitz Holdings"), since their formation in September of 2007 through

the present.

99.     Rocky Flick has served as the President and Chief Executive Officer ("CEO") of

Blitz Holdings, LLC and its four wholly owned subsidiary companies: Blitz Acquisition

Holdings, Inc.; Blitz Acquisition, LLC; Blitz RE Holdings, LLC; and Blitz U.S.A., Inc,

(collectively "Blitz Holdings"), since their formation in September of 2007 through the present.

100.     This organizational structure is depicted as follows:



101.    Kinderhook, through its position as the general and limited partner, majority

shareholder, co-owner, Board Chairman, and Board Member for Blitz Holdings, LLC and each

of its subsidiary companies and Rocky Flick, through his position as shareholder, co-owner, and

President and CEO, actively directed and controlled the daily activities of these subsidiaries and

totally dominated them to such an extent they functioned as instrumentalities and/or shell

companies. Further, these subsidiary companies manifested no separate corporate interest of their

own from their inception through the present.

102.    Kinderhook has disregarded corporate formalities between Blitz Holdings, LLC,

and each of its subsidiary companies in their actual operation in the following ways:

A.    Kinderhook has operated Blitz Holdings, LLC, as a single economic unit by
treating the funds, assets, vendors, and liabilities of one company as the funds,
assets, vendors, and liabilities of the other subsidiary companies;

B.     Kinderhook and Blitz Holdings, LLC, have guaranteed the credit facility of the Blitz subsidiary companies;

C.     Blitz Holdings, LLC, has made inter-company loans to three of its subsidiaries secured with the assets of the remaining subsidiary;

D.     Blitz Holdings, LCC, has funneled funds back and forth between it and each of its subsidiaries to such an extent that they operate as a single treasury;

E.     Kinderhook has used a method of corporate financing to deplete the assets of Blitz Holdings, LLC, and each of its subsidiary companies by means of a bargain sale to defraud the creditors of the Blitz U.S.A., Inc.;

F.     Blitz Holdings, LLC, and its subsidiary companies are located at the same address, employ the same employees and managers, and use the same attorneys and accountants;

G.     Blitz Holdings, LLC, has grossly undercapitalized and underinsured each of its subsidiaries, including Blitz U.S.A, Inc., for their corporate undertaking as evidenced by their recent bankruptcy;

H.     Blitz Holdings, LLC, has diverted and siphoned the assets of Blitz U.S.A., Inc. to its affiliated subsidiary companies to the detriment of creditors;

I.     Blitz Holdings, LLC, has failed to maintain arms length relationships between it and each of its subsidiary companies;

J.     Kinderhook created the corporate structure at issue to unjustly avoid paying any lawful judgment obtained against Blitz U.S.A., Inc. - the subsidiary manufacturer of the Subject Gas Can;

K.     Kinderhook has used de facto separateness afforded by the corporate form to fraudulently achieve shareholder limited liability by creating Blitz Holdings, LLC and its subsidiaries and operating them as instrumentalities and/or alter egos;

L.     Blitz Holdings, LLC, and each of its subsidiary companies have failed to maintain separate corporate records, accounting records, and Board meeting minutes for each company.

103.   On December 16, 2010, Kinderhook formed Reliance Products Holdings, Inc.

("RPHI"), a Delaware corporation. RPHI was authorized by to issue one hundred (100) shares of

Common Stock with a par value of one cent ($0.01) per share. David Britsch, a Senior Legal

Assistant at the New York office of law firm Kirkland & Ellis LLP, located at 153 East 53rd

Street, 39th Floor, New York, NY 10022, executed the Certificate of Incorporation as the Sole Incorporator of RPHI.

104.    In February of 2011, Reliance Products Acquisition Holdings, Inc. acquired three Canadian plastic manufacturers under the ownership of Reliance Products L.P. In order to make the purchase, Kinderhook used the assets of the multiple Blitz subsidiary companies as collateral on several large loans. Upon completion of the sell, Blitz Acquisition Holdings, Inc. entered into a transaction with Reliance Products Holdings, Inc. acquiring all of its stock.

105.    On April 8, 2011, Louis Aurelio executed a Certificate of Amendment changing the name of Blitz Holdings, LLC to LAM 2011 Holdings, LLC.

106.    On May 17, 2011, Kinderhook formed F3 Brands, LLC ("F3"), a Delaware limited liability company. Cindy R. Reilly, a Senior Legal Assistant at the New York office of law firm Kirkland & Ellis LLP, located at 153 East 53rd Street, 39th Floor, New York, NY 10022, executed the Certificate of Formation as an Authorized Person of Blitz Acquisition.

107.    On October 1, 2011, Blitz U.S.A., Inc. transferred half of its 300 employees, a majority of its equipment and inventory to F3 Brands, LLC ("F3'). Grant Kernan, Director of Product Development at Blitz U.S.A., Inc., from 2007 to September 30, 2011, was named President of F3, while and Mr. Flick was named its CEO. The current corporate organizational structure is as follows:



108.    Kinderhook, through its position as the general and limited partner, majority

shareholder, co-owner, Board Chairman, and Board Member for Blitz Holdings, LLC and each

of its subsidiary companies and Rocky Flick, through his position as shareholder, co-owner, and

President and CEO, actively directed and controlled the daily activities of these subsidiaries and

totally dominated them to such an extent they functioned as instrumentalities and/or shell

companies. Further, these subsidiary companies manifested no separate corporate interest of their

own from their inception through the present.

109     On November 9, 2011, LAM 2011 Holdings, LLC, Blitz Acquisition Holdings,

Inc., Blitz Acquisition, LLC, Blitz RE Holdings, LLC, Blitz U.S.A., Inc., and F3 Brands, LLC,

declared bankruptcy under Chapter 11. All of these companies used the same bankruptcy attorneys, moved for joint administration, and treated themselves as a single economic enterprise of interconnected companies.

110.   Kinderhook has further demonstrated their complete disregard for corporate formalities between LAM 2011 Holdings, LLC, ("LAM"), and each of its subsidiary companies, and the aforementioned newly acquired and created subsidiary companies in their actual operation in the following ways:

A.   Kinderhook has operated LAM 2011 Holdings, LLC, as a single economic unit by treating the funds, assets, vendors, and liabilities of one company as the funds, assets, vendors, and liabilities of the other subsidiary companies;

B.   Kinderhook and LAM 2011 Holdings, LLC, have guaranteed the credit facility of the Blitz subsidiary companies;

C.   LAM 2011 Holdings, LLC, has made inter-company loans to three of its subsidiaries secured with the assets of the remaining subsidiary;

D.   LAM 2011 Holdings, LLC, has funneled funds back and forth between it and each of its subsidiaries to such an extent that they operate as a single treasury;

E.   Kinderhook has used a method of corporate financing to deplete the assets of LAM 2011 Holdings, LLC, and each of its subsidiary companies by means of a bargain sale to defraud the creditors of the Blitz U.S.A., Inc.;

F.   LAM 2011 Holdings, LLC, and its subsidiary companies are located at the same address, employ the same employees and managers, and use the same attorneys and accountants;

G.   LAM 2011 Holdings, LLC, has grossly undercapitalized and underinsured each of its subsidiaries, including Blitz U.S.A, Inc., for their corporate undertaking as evidenced by their recent bankruptcy;

H.   LAM 2011 Holdings, LLC, has diverted and siphoned the assets of Blitz U.S.A., Inc. to its affiliated subsidiary companies to the detriment of creditors;

I.   LAM 2011 Holdings, LLC, has failed to maintain arms length relationships between it and each of its subsidiary companies;

J.      Kinderhook created the corporate structure at issue to unjustly avoid paying any lawful judgment obtained against Blitz U.S.A., Inc. - the subsidiary manufacturer of the Subject Gas Can;

K.      Kinderhook has used de facto separateness afforded by the corporate form to fraudulently achieve shareholder limited liability by creating LAM 2011 Holdings, LLC, and its subsidiaries and operating them as instrumentalities and/or alter egos;

L.      LAM 2011 Holdings, LLC, and each of its subsidiary companies have failed to maintain separate corporate records, accounting records, and Board meeting minutes for each company.

111.    Plaintiff seeks to pierce the corporate veil and/or impose alter ego liability on the party responsible for abusing the corporate form-Kinderhook Industries, LLC- to avoid the fundamental unfairness of not being able to collect any lawful judgment she may obtain against Blitz U.S.A., Inc.

112.    Plaintiff is entitled to an order piercing the corporate veil and/or impose alter ego liability on Kinderhook Industries, LLC and a determination that Kinderhook Industries, LLC, is jointly and severally liable for any damages Plaintiff is entitled to recover from Blitz U.S.A., Inc.

## CAUSATION AND DAMAGES

113.    Plaintiff re-alleges and incorporates in this section each and every preceding allegation as if fully pled herein.

114.    Defendants caused Devan VanBrunt significant and permanent injury and harm as a result of the negligence and other tortious conduct set forth herein. Plaintiff demands money damages consistent with Minnesota law for the harm inflicted by Defendants, including, but not limited to the following:

a.      Past and future costs of medical care;

b.      Past and future losses of wages, entitlements, support and

other recoverable economic losses;

c.      Past and future emotional distress;

d.      Past and future pain and suffering and

e.      Past and future hedonic damages.

WHEREFORE, Robyn Smith as Mother and Natural Guardian for Devan VanBrunt, prays that she be awarded all compensatory damages due and owed, including attorney's fees and costs associated with the prosecution of this action, as allowed by Minnesota law, and for such other and further relief as this Honorable Court deems just and proper.

By:   /s/ Hank Anderson
Hank Anderson, Texas Bar No. 01220500
Benton G. Ross, Texas Bar No. 24068124
THE ANDERSON LAW FIRM
4245 Kemp Blvd., Suite 810
Wichita Falls, Texas 76308
Phone: (940) 691-7600
Fax: (940) 228-3194
*Admitted Pro Hac Vice*

Michael Strom, No. 170082
Shauna M. Verheyen, No. 0388178
SIEBEN POLK, P.A.
1640 Frontage Road, Suite 200
Hastings, MN 55033
Phone: (651) 437-3148

Daniel S. Haltiwanger, Esq.
Brady R. Thomas, Esq.
RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC
1750 Jackson Street
Barnwell, SC 29812

**ATTORNEYS FOR PLAINTIFF**