UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Robyn Smith for Devan VanBrunt,
a Minor, by his Mother and Natural
Guardian,

                      Plaintiff,        Civ. No. 11- 1771 (RHK/LIB)
                                           **MEMORANDUM OPINION**
                                           **AND ORDER**

v.

Blitz U.S.A. Inc., Wal-Mart Stores, Inc.,
and Kinderhook Industries, LLC,

                      Defendants.

---

Daniel S. Haltiwanger, Brady R. Thomas, Richardson, Patrick, Westbrook & Brickman, LLC, Barnwell, South Carolina, Anton Cheskis, Michael R. Strom, Sieben Polk P.A., Hastings, Minnesota, Shauna M. Verheyen, Hamline University School of Law, Saint Paul, Minnesota, Hank Anderson, Benton G. Ross, The Anderson Law Firm, Wichita Falls, Texas, for Plaintiff.

Timothy P. Harkness, Pamila Gudkov, Freshfields Bruckhaus Deringer US LLP, New York, New York, Seth Leventhal, Leventhal PLLC, Minneapolis, Minnesota, for Defendant Kinderhook Industries, LLC.

---

## INTRODUCTION

      Plaintiff Robyn Smith represents her son, Devan VanBrunt, a twelve-year-old who was injured by an exploded gas can that Defendant Blitz U.S.A., Inc. ("Blitz") manufactured and Defendant Wal-Mart Stores, Inc. ("Wal-Mart") sold to Smith. Smith initially brought suit against Blitz and Wal-Mart. After Blitz filed for bankruptcy, Smith amended her Complaint to join Blitz's parent company, Defendant Kinderhook

Industries, LLC ("Kinderhook"). Kinderhook now moves to dismiss the claims against it for lack of personal jurisdiction. For the reasons below, the Court will grant the Motion.[1]

## BACKGROUND

The Court recounts the following facts as alleged by Smith. Devan used a portable plastic gas can to pour gasoline on a charcoal grill to ignite it. The gasoline vapors outside the can ignited and the flame flashed back, following the vapor trail inside the gas can, causing it to explode. He suffered severe burns from the explosion. Smith then commenced this action against Blitz and Wal-Mart alleging that (1) the gas can was defective because its design did not utilize a "flame arrester," (2) each Defendant knew the gas can was dangerous because of previous lawsuits and yet failed to warn consumers, and (3) Wal-Mart continued to sell this gas can despite knowing it was dangerous and/or defective.

After Smith commenced this action, Blitz filed for bankruptcy and the claims against it were automatically stayed. Smith then filed a First Amended Complaint (Doc. No. 61) adding Blitz's parent companies, Kinderhook and Kinderhook Capital Fund II, L.P. ("Kinderhook Capital Fund"), as defendants. However, Smith later discovered that Kinderhook Capital Fund was not a diverse party and filed a Second Amended Complaint (Doc. No. 109), dropping her claim against Kinderhook Capital Fund but not against Kinderhook. Kinderhook now moves to dismiss Smith's claim against it (Count VII, "Piercing the Corporate Veil") for lack of personal jurisdiction.

---

[1] The Court need not address Kinderhook's alternative motions to dismiss for failure to state a claim, to transfer to bankruptcy court, or to stay the claim against it.

**STANDARD OF DECISION**

In order to survive Kinderhook's Motion, Smith must make a prima facie showing of personal jurisdiction.  Lakin v. Prudential Sec., Inc., 348 F.3d 704, 706 n.3 (8th Cir. 2003).  Because the Court has not held an evidentiary hearing, it must view the evidence in the light most favorable to Smith.  Pangea, Inc. v. Flying Burrito LLC, 647 F.3d 741, 745 (8th Cir. 2011).[2]  To determine whether Smith has discharged her burden, the Court must ask two questions.  First, has Minnesota's long-arm statute been satisfied?  Second, would exercising jurisdiction comport with the Due Process Clause of the Fourteenth Amendment?  See Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 613 (8th Cir. 1998).  These two inquiries collapse into one, however, because Minnesota's long-arm statute extends jurisdiction to the outer limits of the Due Process Clause.  Id. at 614.  Due process requires that a defendant have sufficient "minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal citation omitted); accord, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291–92 (1980).  The Court examines five factors to determine whether exercising jurisdiction comports with due process: (1) the nature and quality of the contacts with the state, (2) the quantity of contacts with the state, (3) the relation of the cause of action to these contacts, (4) the state's interest in providing a forum for its

---

[2] No party has requested an evidentiary hearing.

residents, and (5) the convenience of the parties.  E.g., Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003).

## ANALYSIS

The parties agree that Kinderhook, on its own, does not have the minimum contacts with Minnesota necessary for personal jurisdiction.  Instead, Smith contends that Blitz is Kinderhook's instrumentality or alter ego, and that Kinderhook is subject to personal jurisdiction through Blitz's contacts with Minnesota.[3]  (Second Am. Compl. ¶ 15.)

Minnesota has recognized that "a non-resident corporation may subject itself to jurisdiction in a state by virtue of its subsidiary company in that state, [but] the companies must be organized and operated so that one corporation is an instrumentality or alter-ego of the other."  Zimmerman v. Am. Inter-Ins. Exch., 386 N.W.2d 825, 828 (Minn. Ct. App. 1986) (internal citation omitted).  A finding of vicarious personal jurisdiction is uncommon,[4] however, because "[t]here is a 'presumption of separateness' between a parent and subsidiary corporation."  Select Comfort Corp. v. Innovation Ads, Inc., Civ. No. 10-925, 2011 WL 31715, at *4 (D. Minn. Jan. 5, 2011) (Davis, C.J.).

---

[3] The parties do not dispute that Blitz is subject to personal jurisdiction in Minnesota.

[4] In fact, Smith cites only two Minnesota cases in which a court found that the subsidiary functioned as its parent's instrumentality or alter ego for personal jurisdiction purposes: Scott v. Mego Int'l, Inc., 519 F. Supp. 1118, 1126 (D. Minn. 1981) (Murphy, J.) and JL Schwieters Constr., Inc. v. Goldridge Constr., Inc., 788 N.W.2d 529, 536–37 (Minn. Ct. App. 2010).

To determine whether a subsidiary should be treated as an instrumentality or alter ego of its parent, courts consider the extent to which the entities' management, operations, and finances overlap.  Relevant facts include:  common officers or directors, consolidated financial statements, joint tax returns, a common address, a subsidiary's general lack of corporate formalities, a parent's funding of the subsidiary, and a parent's control of the subsidiary's operations.  See, e.g., Scott v. Mego Int'l, Inc., 519 F. Supp. 1118, 1126 (D. Minn. 1981) (Murphy, J.); Stratasys, Inc. v. ProtoPulsion, Inc., No. A10-2257, 2011 Minn. App. Unpub. LEXIS 682, at *24–25 (Minn. Ct. App. July 18, 2011); Curtis v. Altria Grp., Inc., 792 N.W.2d 836, 846–47 (Minn. Ct. App. 2010), rev'd on other grounds,  813 N.W.2d 891 (Minn. 2012); JL Schwieters Constr., Inc. v. Goldridge Constr., Inc., 788 N.W.2d 529, 535–37 (Minn. Ct. App. 2010); Zimmerman, 386 N.W.2d at 828.  Overall, the Court must determine whether the foreign parent "so controlled and dominated the activities of its resident subsidiary that the latter's separate corporate existence was in effect disregarded."  Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634, 637 (8th Cir. 1975).  The Court concludes that Smith has not made such a showing.

Smith alleges the following facts in support of vicarious jurisdiction in this case: (1) some of Kinderhook's members are limited partners in Kinderhook Capital Fund, which owns 75.2% of LAM Holdings 2011 LLC ("LAM"), which indirectly owns Blitz (Second Am. Compl. ¶ 107); (2) Kinderhook created a complex corporate structure in order to shield itself from liability (id. ¶ 102.J); (3) two of Blitz's four directors are Kinderhook officers (id. ¶¶ 97–98); (4) Blitz and Kinderhook share an address (Pl.'s

Mem. Opp'n 6; id. Ex. 16); (5) Kinderhook guaranteed Blitz's credit (Second Am. Compl. ¶ 110.B); (6) Kinderhook depleted Blitz's assets "by means of a bargain sale to defraud Blitz's creditors" (id. ¶ 100.E); and (7) Kinderhook used Blitz's assets as collateral on loans used to acquire three other plastic manufacturers (id. ¶ 104). Smith makes further allegations that involve Blitz but not Kinderhook, including a failure to observe corporate formalities between LAM and its subsidiaries and among LAM's subsidiaries. (See, e.g., id. ¶¶ 102, 107, 109–10; id. ¶ 100.G (alleging Blitz was undercapitalized and underinsured).) However, because Smith does not connect these allegations to Kinderhook, they are not relevant to the Court's analysis.

The Court concludes, based on the totality of the evidence, that Smith has not made a prima facie showing of personal jurisdiction over Kinderhook. While direct ownership is not necessary to find that a subsidiary is the alter ego or instrumentality of a parent, the attenuated relationship between Kinderhook and Blitz vitiates Smith's claim. Although Smith alleges that the two companies share an address because Blitz used Kinderhook's address on its lease, Blitz prefaced the address with "C/O Kinderhook Industries LLC" (id. Ex. 16), indicating that the address was Kinderhook's, not Blitz's. Smith also implies that Kinderhook's creation of various subsidiaries in order to avoid liability is suspect, but that is a proper purpose for limited liability companies. See, e.g., Kreuger v. Zeman Constr. Co., 758 N.W.2d 881, 890 (Minn. Ct. App. 2008). Finally, although Smith alleges that Kinderhook depleted Blitz's assets through "bargain sale financing" by selling Blitz's subsidiary, F3 Brands LLC, the sale was approved by the bankruptcy court and it benefited Blitz's creditors, not Kinderhook. (See Second Am.

-6-

Compl. ¶ 102.E; Pl.'s Mem. Opp'n Ex. 2.)

The only facts supporting Smith's claim that Blitz operates as an instrumentality or alter ego are that two of Blitz's directors are Kinderhook officers and that Kinderhook guaranteed Blitz's credit and used its assets as collateral. Smith presents "no evidence that [the parent] is or ever has been involved in day-to-day control over production or distribution of [its subsidiary's] products." Curtis, 792 N.W.2d at 847. "[The subsidiary] maintains separate offices, books and accounts [from its parent]. Its employees are not hired or paid by [its parent]." Zimmerman, 386 N.W.2d at 828; see Aurelio Decl. ¶¶ 15–19. And, unlike Scott or JL Schwieters, all of Blitz's officers and half of its directors are unrelated to Kinderhook. 519 F. Supp. at 1126; 788 N.W.2d at 536.

On balance, Smith has not shown that Kinderhook has "exercised the type of control or dominance . . . necessary to subject it to the personal jurisdiction of a Minnesota court." Zimmerman, 386 N.W.2d at 828. Accordingly, Smith's claim against Kinderhook will be dismissed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Kinderhook's Motion to Dismiss or, in the Alternative, Transfer or, in the Alternative, Stay (Doc. No. 115) is **GRANTED IN PART**. Kinderhook's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED** and Count VII of

-8-

Smith's Second Amended Complaint (Doc. No. 109) is **DISMISSED WITHOUT PREJUDICE.**

Dated: November 6, 2012                s/Richard H. Kyle
                                       RICHARD H. KYLE
                                       United States District Judge